of America or arguments not to exceed 15 minutes per side. Mr. Jonathan Meltzer for the appellate. May it please the court. My name is Jonathan Meltzer and I represent Philip Thompson. I would like to reserve four minutes of my time for rebuttal. You may. I want to begin by highlighting the issues on which the parties agree. Both parties agree that the government, at least provisionally, offered a fixed plea agreement under Rule 11C1C to Mr. Thompson for which he would have received a 15-year prison sentence. Both parties agree that Mr. Thompson's trial counsel told him that if he turned down that plea agreement, he would be facing sentencing exposure of 16 to 19 years in prison. And both parties agree that Mr. Thompson ultimately received a guidelines range sentence of 40 years in prison, 25 more years than he would have received had he accepted the original plea agreement. On those facts, there are no disagreements. The parties diverge on two critical issues. First, whether the fact that Thompson's attorney underestimated his sentencing exposure by two decades constitutes deficient performance under Strickland. And second, whether a plea agreement existed on the morning of Mr. Thompson's scheduled change of plea hearing such that counsel's extraordinary error harmed Thompson and constituted prejudice under Strickland. Thompson can make both of those showings. Isn't there also a question of whether the plea colloquy did or did not correct one or more of those errors? I believe, though, that question is – the government has disputed that, but I believe that question is determined both by the Supreme Court's cases in Lafler and Fry as well as the Kavadad-Yepes case that the government cites in its brief. So let me start with Lafler and Fry because in that case, you had – in Lafler, you had a – you had deficient performance on a sentencing plea, and then you had ultimately a fair trial. Was there an underestimation? I don't remember. What was the deficiency? The deficiency was defense counsel told his client that he could not be charged with attempted murder because he was shot below the – he had shot below the waist instead of above the waist, so it wasn't a sentencing guidelines issue. But what the court made clear in that case was the fact that defense counsel – or excuse me, the fact that ultimately he had a fair procedure at criminal trial was not enough to undo the taint of counsel's misadvice at the plea stage. And Lafler said the same thing where counsel – where a defendant got bad advice on his first plea agreement. He ultimately received a second plea agreement in Fry, and in that case, he had a valid plea colloquy at that point in the second plea case. But what the court made clear over a dissent by Justice Scalia that makes the exact argument that the government is making here, the court said no, any amount of good procedure on that second plea agreement can't solve the taint of the first plea agreement. And so whatever advice Mr. Thompson received here about his – about what the consequences would be of the plea agreement he ultimately accepted, that can't undo counsel's misadvice in the first agreement from which he could not ultimately get that 15-year sentence that the government was promising because he received that bad advice that ultimately led him to plead guilty to – you know, without a plea deal, and that's the issue on which he received that ultimate sort of – that plea colloquy. And again, this court in Cavidad-Yepes at footnote 3 makes precisely this point because in that case, there was no sort of first plea agreement. So the court says here the plea colloquy solves this issue, but it points to this very issue, and it says if there had been a sort of first plea agreement here, a plea colloquy for the second plea agreement couldn't solve the problems of misadvice in the first plea agreement. And so that's why we think the government's citation to the Hicks case doesn't apply here and why there's no amount of good procedure, as the Supreme Court made clear in Lafleur and Frey, that can solve defense counsel's misadvice on the first plea – on the first initial plea. The solving, the inability to solve occurs because there's no retrieving that 15-year deal. Is that – is that your argument? That's exactly right, and let me explain what this court has said is defense counsel's obligation here and why defense counsel's misadvice cannot be cured by this ultimate plea agreement. Because what this court said in Smith is that in the system of justice in which the sentencing guidelines play such a crucial role, it is defense counsel's obligation to explain defendant's sentencing exposure under the guidelines. And that explanation is necessary so that a defendant can properly consider the deal before him. And that if – and it cites the – this court cites the Magana case from this circuit and the Day case from the Third Circuit. And what it says is if a defendant receives misadvice about that sentencing exposure, he cannot make an informed and intelligent decision about the plea deal that was facing him. And so in this case, that's precisely what happened, and he could not make an informed and intelligent decision about that 15-year plea agreement because the choice he thought he was making was between 15 years on the one hand and 16 to 19 years with an option to appeal and lower that 16 to 19-year sentence. Ultimately, the choice he was making was between 15 years and 34 to 43 years. And because that's the ultimate choice he was making, he could not make an informed and intelligent decision about that 15-year plea agreement. And so the reason why ultimately he – you know, his plea colloquy can't solve that is because the plea colloquy can't undo the fact that he couldn't make an informed and intelligent decision about that 15-year plea agreement. And that's exactly what this court has said repeatedly. Defense counsel's job is to do is to put his client in a position to make that informed and intelligent decision. And so the plea colloquy simply cannot put him back in the position where he could make that informed and intelligent decision that's required by this court's case in Smith. And that's why the Lafleur and Frye cases make clear that you simply cannot have any subsequent good procedure to solve the sort of taint of the problematic procedure that led him to not have a clear ability to evaluate the plea agreement in front of him. And so – Is there a scenario under which courts can order the government to offer the 15 years and him to accept it? Or is the option here that he is able to withdraw his plea and you sort of start over? No, so if you – this court's case in Magana, the Magana case that we've cited in our brief, what this court did was it sent the case back down to the district court. And it ordered the government to resubmit, in that case, a 10-year plea agreement the defendant had turned down because of affirmative misadvice. And it said the government should reenter that plea agreement and allow defendant to accept it or not accept it. And that if the government decided instead to try to enter some sort of different plea agreement that had a higher sentence, the court – the district court should interpret that as having a presumption of malicious prosecution. In fact, that they were putting in a higher – a higher sentence for a problematic reason. And so we think the Magana case gives you sort of a clear precedent to remand this case and say, you know, this court orders the district court to have the government resubmit this 15-year offer that was offered to Mr. Thompson. And have Mr. Thompson have the opportunity to be put back in the position that he was in, again, with the ability to make that intelligent and informed decision that this court's case is requiring. And so we think that is the proper remedy here. And that the Magana case makes – if you just look, it's the very last paragraph of the Magana case. It actually says – you know, it gives you a sort of precise remedy for a scenario like this one. And so – What happened then to Magana? Did Magana get – was there cert – saw it in that case? I don't know, Your Honor. And have we followed – have we cited that case again favorably? You cited it in the Smith case. It just seems like such a complete violation of separation of powers. But it's – what's happened to it? I don't know about – and certainly it's true that Magana was a case that, you know, the sort of – I have not seen this court cite the remedial portion of the Magana case. But again, I guess I would say even putting aside Magana, what the Supreme Court says in Lafler is that it's up to this court to essentially – or up to courts generally to sort of issue a remedy that will put the defendant back in a sort of fair position where he would have been had he not been – had the Sixth Amendment – sort of Sixth Amendment error not tainted the process. And so, you know, the Lafler case says it's up to courts to come up with a remedy that is tailored to that particular violation. So we think here the remedy – it's a sort of particularly clear case because it's a plea in which there was a 15-year sentence that the district court was either going to have to take or not take. There was no sort of other option. It wasn't an ultimate guidelines range sentence. It was a 15-year sentence. And so we think here the remedy would be particularly clear because in this case we know where he would have been had he gotten the good advice, which is we know had he known he was choosing between 15 years and 35 or 40 years, he would have known – and let me be clear, 35 or 40 years with the ability – what he wanted was to be able to dispute the acceptance of responsibility deduction. That's a two-point deduction. That's what he wanted to dispute. So had he known he was looking at 35 or 40 years, that two-point deduction gets him down to roughly 30 to 35 years. So he would have been facing 15 years and a best-case scenario of 30 years. So there's no doubt that he would have accepted that plea deal had he truly understood the – sort of the sentencing exposure he was facing and the deal that – sort of the options under the deal. And that's precisely what this Court has done. Again, I turn back to the Smith case. At page 553, Smith makes clear that a defendant needs to understand his sentencing exposure so that he can make an informed and intelligent decision about the choice in front of him. And we submit that if Mr. Thompson had been put in that position by counsel, he would have been able to make that intelligent and informed decision and – I've been waiting for you to take a breath, but you never take a breath. Well, I can see I have less than a minute left, so I'm trying to do my best to get through. Judge McKeague, from questioning. Very clever technique. Well, I'm sorry. I'm sorry, Judge McKeague. You started out by saying that the parties agreed there was a provisional plea offer, which means the parties haven't reached agreement on whether there was an actual plea offer. When we fashion this relief, if we otherwise agree with you on the other matters, don't we need to know whether there actually was or was not an actual offer on the table? Which I assume is then going to cause you to say, yes, that's why there needs to be an evidentiary hearing. We think that the only evidence in the record, the clear evidence, is from my client that there was a plea agreement, but if the court disagrees and it thinks there is disagreement on an issue of fact, yes, an evidentiary hearing would be required. Well, interestingly enough, and I suppose we'll hear from Ms. Delery on this, I don't see that the government ever says there wasn't. It just says you didn't prove there was. May I answer? Yes, you may. So I think it's unclear on that question. The government in its briefing below certainly never said. In fact, if you look at 154 to 155 of the 2013 docket record, the government presupposes the existence of a plea agreement and says Mr. Thompson wouldn't have accepted the plea agreement and he got good advice about the plea agreement. So in the record, the government never says there was no deal, and the government went and got Mr. Matthews. But it is your burden to prove there was. Well, it's our burden to show a reasonable probability that the court would have been presented with the plea deal, which includes the fact that a deal existed. Okay. Yeah. Thank you. Okay. Good morning. Sorry. Good morning, and may it please the court, Lauren Delery for the United States. Appellant Philip Thompson asked this court to vacate his 40-year sentence and instead sentence him to 15 years based on his own assertion, unsupported by anything else in the record, that he rejected a valid plea offer. This presupposes that there was a valid plea offer. The district court didn't take the case. Why, Counselor, if there was not a valid plea offer, why did you not place that on the face of the record? I don't have a good answer for why that wasn't clearly set out in the affidavits of Mr. Thompson's attorney. But the record does make sort of clear that there was no plea offer. There's nothing else in the record that suggests there was a plea offer. Well, you have Mr. Thompson's statements that there was a valid plea offer, and the question is whether that reasonably places on the face of the record that it existed, and then the question becomes whether the government comes back and puts anything that contradicts that. Your argument cites only to the dispute between Mr. Thompson and his own counsel, and you provide nothing. Why in that situation is it not reasonably appropriate on this record to assume that there was a valid plea agreement, and because you failed to put anything in the record that said otherwise, there's an inference against your position? The district court found Mr. Thompson's affidavit to be incredible, and the district court found it to be incredible based on the face of the affidavit and based on what else was in the record, and there's nothing else in the record that would have supported the idea that there was a valid plea agreement. But apparently you agree there was a provisional plea agreement. We did not agree that there was even a provisional plea agreement. There were plea negotiations in which the defendant's attorney requested a 15-year sentence. Because the flip side of this, and we're just into speculation now, is the government was steadfast in its position that he shot at the officer and that he's going to get a 35- to 40-year sentence, so it is curious why anybody would believe there actually was a 15-year plea deal on the table given that guilt is absolutely established here, as I understand it. It's only a question of arguing over the enhancements under the guidelines. Do I understand that correctly? That is exactly correct. But it would be a lot more helpful to us if you could just tell us whether there was or wasn't a plea agreement from the government standpoint. And like Judge Stranz, I don't think you really do. We do not in the record know, and we're looking at the record as we have before us for this appeal. In the circumstance where this is the record that you have before us on this appeal, the question that we would address is whether Thompson's allegations in the record are contradicted by the record, inherently unreliable, or conclusions rather than statements of fact. And in that dispute of fact, aren't we in an evidentiary hearing by requirement? No, Your Honor. The district court found Mr. Thompson's affidavit to be unreliable. It was unreliable on its face, especially considering the allegations, two armed bank robberies, a high-speed chase, and shooting at officers. A 15-year plea deal is not credible in that situation. Also, the district judge found that it was incredible in light of the record. There was nothing in the record that would show that Thompson rejected a valid plea deal. The transcripts don't mention a rejected valid plea deal. There are no e-mails. Mr. Thompson never raised this issue at sentencing. He didn't contest the assistance of his counsel, and he didn't try to withdraw the plea. And more important, the district court already had rejected. Doesn't he allege that he called his attorney and made an effort to contact his attorney to withdraw the plea and that his attorney would not call him back? He does make that allegation that happened later. At the sentencing, when the judge was going through the PSR and setting forth what the actual guideline range would be, Mr. Thompson objects to several things, but not to the fact that the guideline range was so much higher than what he would have expected. There are actually two sentencings because it was adjourned to come back on the issue of the enhancement, right? That's correct, Your Honor. So he didn't complain about this on either time he was before the court? Either time. And moreover, the district judge already knew that there was a question of Mr. Thompson's credibility. The district court had already determined that Thompson had made a material false statement that was proven false with the intent that the court would rely on it. That statement was that he hadn't shot at the police. The government put on more proof and determined that he had shot at the police. And the court found that statement to be so materially wrong and so materially false that the court denied acceptance of responsibility credit. Here's the problem. I think your opposing counsel has put a finger on what the issue is. What we have is a plea negotiations and, on the record, a claim that there was a plea offer. That was rejected based on misadvice. I mean, there's no question. Everybody agrees that the advice on how many years would be likely in this situation was decades off. So if you have that setting, then you've rejected that plea. When you go before the court, he's going before the court on an open plea, not the plea that he has rejected. And don't Laffler and Fry both make very clear that the court's colloquy seeking to determine whether there is an informed plea, whether it is an informed and intelligent decision, don't they just say very clearly that that is not the place that can solve an error that has already occurred and from which the prejudice has already arisen? I'm looking at Fry, and the court says the guilty plea that was entered after the trial court fulfilled its obligation to ensure the voluntariness cannot supersede error by the defense counsel. And Laffler says that that's not the correct means by which to address a claim of ineffective assistance. Why hasn't the Supreme Court already ruled on the argument that you raise? In Fry, Fry says that the point of the plea colloquy is to put on the record the defendant's understanding of the plea and its consequence, to establish that on the record. Mr. Thompson's plea hearing was at 9.30 in the morning. He suggests that he rejected a 15-year plea deal earlier that morning while he was waiting for court. He knew these things. It was on the record that he was aware that the guideline range was merely advisory. Well, what was he also aware of? He was aware that his counsel had said to him, it's 15 years, no appeal. It's 16 to 19 years, you get to make an appeal. And his affidavit says, I thought, for a year or two, it would be worth it because I would be able to make an appeal that might avail me of the less than 15 years. And isn't that the very type of problem that Lafleur and Fry addressed, that you cannot clean up an already resolved error merely through the colloquy with the court? In Lafleur and Fry and the other cases cited by Mr. Thompson, like Magana, like Smith, and like Morris, these are cases where there's an affirmative representation based on the mandatory guidelines that this is what you're going to get. In Magana, it was an affirmative representation of a maximum possible sentence of 10 years when the defendant really faced a minimum of 20 years. In Smith, the attorney didn't consider the guidelines at all. In this case, what we're looking at, even assuming that there was a valid plea agreement, which the district court decided that there wasn't, and the standard of review of that credibility decision is clear error. The district court said there never was a plea agreement. And even if the defense attorney had miscalculated the guideline range, and he did miscalculate the guideline range, he did it for two reasons, one of which is Mr. Thompson's own lies. Mr. Thompson lied to his attorney, and he lied to the court. And Mr. Thompson's attorney in his affidavit pointed out that the testimony at the sentencing hearing was more graphic and detailed than what he had seen in the discovery. And Mr. Thompson's attorney shouldn't be held to a standard that would require him to disbelieve his client or held to a standard that would require him to predict that his client would lie to the district court. Didn't Mr. McAfee have an understanding already from the prosecutor that there was a question about the shots?  And knowing that, how could it not be gross misadvice not to advise his client of that potentiality? He did advise his client of the potentiality. In telling him that it would be 16 to 19 years? His attorney clearly miscalculated. But he miscalculated in ways that were based on Thompson's lies, and the ultimate sentence was based not just on this one miscalculation of whether or not the shooting at the officer would apply, but also the acceptance of responsibility credit that Mr. Thompson lost. And Mr. McAfee's failure to correctly calculate his criminal history, correct? Correct. But there's a case, Mix v. Robinson, in which the court said that there's no constitutional deficiency when the attorney underestimates a sentence in part because of the defendant's mischaracterization. Here the defendant lied to the court, he lied to the police, and he lied to his counsel. And so when his counsel relies on that misinformation, when the counsel believes his client over-discovery, even the district judge agreed that it's amazing what additional testimony can do to a record that appeared to be complete. His counsel saw a record, and he saw Mr. Thompson, and Mr. Thompson lied. And he miscalculated based on that lie, and Mr. Thompson lost. The case says it only has to be in part. In part. Right. Yes, and this was partially because of the lie. There were other miscalculations, but in part the miscalculation was due to Thompson's lie, and it was due to Thompson himself losing his credit because he lied to the court again. And what is your response to the distinction between a colloquy that is discussing a plea that is at issue, a plea, for example, that was accepted, versus a plea that is lost before you ever reach the court and the opportunity for a colloquy related to a different plea? The colloquy covers several things that the court wants the defendant to know. In this case, the colloquy clearly established that as of that morning, Thompson knew that the guideline range that his counsel gave him was just an estimate. He knew that there was no way to predict what the district judge would do, and he knew that there was no way to tell what the guideline range would actually be until he had the PSR. That has nothing to do with whether or not there was a plea, what the terms of the plea were. It's about his knowledge that the estimates were not necessarily true. But this knowledge came after he had already rejected it based on misadvice. This knowledge came within minutes of the rejection. We don't know when exactly the knowledge came, but we know that he averred to that knowledge at 9.30 a.m., and he said he rejected the plea that morning. That could have only been at 9 a.m. This is a matter of minutes in which it's unlikely that his counsel would have then counseled him about all of the guideline range and everything, especially considering by the time he made this open plea he didn't know the guideline range and he didn't know what there would be. So Mr. Thompson's attorney told him these things at least by that morning, and Mr. Thompson knew at that morning, and he averred in the plea colloquy, that he did know that it wasn't set in stone, especially considering that the guidelines are not mandatory. Well, if it's not clear error for the district court to determine that no plea was on the table, you know, disregarding the affidavit, we don't even have, I mean, I don't think we have a Strickland claim here, do we? That's correct. But for Strickland, you have to show that there would be a difference in the process. And if there was no plea agreement that he could ever have agreed to, then there was no deficiency, there was no other thing that could have happened in the plea process based on a plea that never happened. And the district judge determined on a credibility determination that was not clear error that Mr. Thompson's affidavit should not be believed. That was a credibility determination based on the judge's knowledge that Thompson would lie to the court in a material way with the intent that the court would rely on it. I see I'm running out of time, and I'd like to... Refresh my recollection, if you would. There was an affidavit here from Thompson's attorney, right? Yes. And does he say in the affidavit that there was a binding plea that was offered, or does he not? He does not. He says that up to the day before that change of plea hearing, there was no binding plea agreement. Thompson's attorney never says that a plea agreement... All we have is Thompson saying there was in a conclusory fashion, and that's refuted by his own lawyer. It's not fully refuted by his lawyer because his lawyer's affidavit stops as of the day before, as of the day of the plea agreement, as the day of the plea colloquy. But it is disputed as of anything up to that point, and also was rejected by the district court as inherently unreliable on its face considering... That's Thompson, not the lawyer, right? That's Thompson. But the lawyer's affidavit was entered later, correct? Because we're after the fact, did you render effective assistance? So when he put in that affidavit, he knew that his client had said, you gave me a valid plea offer on the morning of this hearing, and yet his affidavit did not deny that. Is that correct? That's correct. The affidavit did not deny it, but it also never established that there was a valid plea offer. There's nothing but Thompson's own affidavit, which also was written four years after the point, which also was written in support of a 2255 motion that otherwise would absolutely have failed. He wrote this affidavit as the only evidence that would support a 15-year plea agreement that had been sent to him. Only that affidavit, and the district judge found that affidavit not to be credible. If I may conclude, or I realize I'm out of time.  Thank you, counsel. You did a fine job. Thank you. A few brief points in rebuttal. First of all, to respond to Judge Cook's question, what this court has made clear is when you have a criminal defendant who puts forth a factual narrative and you have the government that simply says that factual narrative is false, as the government did for the first time on appeal here, what this court said in Pola and this court said in Huff is an evidentiary hearing is required to sort out those factual differences. And Pola is particularly on point because there you had a criminal defendant who put in an affidavit, defense counsel who put in an affidavit. The district court looked at both and said, I believe defense counsel. And what this court said is because it wasn't inherently incredible what the defendant said in his narrative, the court was required to have an evidentiary hearing. And here the government just admitted that it put nothing in the record that disputes Thompson's affidavit, that the affidavit that it sought from defense counsel does not directly dispute Mr. Thompson's account. And so what the government is asking you to do is on the basis of nothing in the record, determine that the district court made a correct factual finding here, and one that I'll point out, there was no credibility finding. But if the affidavit of the lawyer speaks to anything up to the day of sentencing, or excuse me, the day of the plea, then what you're focusing on is that somehow there was a plea offer made by the government the morning of the hearing and that he got the incorrect advice and he rejected it all in this matter of minutes before the plea colloquy? Not quite, Your Honor, because if you look at both affidavits, what they make clear is that this 15-year provisional agreement was made months in advance of the plea hearing. That's what Mr. McAfee's affidavit that the government went out and sought said. So we're not saying that. That's what defense counsel is saying, but that the deal wasn't finalized, and Mr. McAfee was both in contact with the government and in contact with defense counsel to see if he could get both. But he said it wasn't finalized as of the day before. He says as the plea hearing was looming. He doesn't make any. The day of comes from my client, who says for the first time he was presented with a final plea agreement on the day of. There's no evidence of that whatsoever except his statement that he was. And what this court has said repeatedly in POLA, in Huff, in Valentine, is where you have a defendant who makes a factual narrative and you have the government simply saying that's not true, the district court is required to have an evidentiary hearing. Where did the district court, at what stage do we have counsel saying the district court said he's not credible? His affidavit is incredible. The district court, if you look in the decision in the 2255 order that's being appealed here, the district court does not say the defendant is not credible. He simply says the weight of the evidence points to the existence of no plea agreement. So there was no credibility finding. Counsel is referring to at the sentencing hearing when the court ultimately determined that my client wasn't credible on the issue of shooting the gun. But that's a totally different issue. Only on the gun. Gotcha. On the gun, yeah. And so I also would just like to take a quick moment to talk about sort of our responsibility for defense or our asserted responsibility for defense counsel's errors. If you look at the sort of nine-point difference between what the PSR found, which included an acceptance of responsibility deduction, and what the 17 to 19, the top sentence that my client was told by his counsel, there are nine points there. Seven points come from the fact that my client fired his gun in the commission of a felony. That was never disputed by my client, not once. Also two points for obstruction of justice. Did he dispute that to McAfee? Never. That he fired his gun. Mr. McAfee's affidavit makes clear that he understood that my client fired his gun. There's a two-point enhancement for obstruction of justice for leading the police on a chase. Also never in dispute. And so we get from sort of that 16 to 19-year sentence to 34 to 40 in the PSR without any of the asserted issues which the government claims is my client's fault. Thank you. You are appointed under the Criminal Justice Act, and the court thanks you very much for your service in helping us. All right. We can adjourn court.